# United States District Court
# Central District of California

| | |
|---|---|
| KRYSTAL LOPEZ,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF GLENDORA; LISA ROSALES; WILLIAM RAYMOND KODADEK; MATTHEW WENDLING; and DOES 1–10,<br><br>　　　　　Defendants. | Case No. 2:17-cv-06843-ODW (RAO)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [34]** |

## I. INTRODUCTION

Plaintiff, Krystal Lopez, alleges various claims pursuant to 42 U.S.C. § 1983 and supplemental state law claims following a traffic stop. Plaintiff alleges that she was unlawfully detained and searched and that Defendants used excessive force to detain and silence her First Amendment Rights. Additionally, Plaintiff alleges that Defendants' violations of her rights were done pursuant to the City of Glendora's policy or custom.

Pending before the Court is Defendants' Motion for Summary Judgment ("Motion). (ECF No. 34.) Defendants, City of Glendora; Lisa Rosales; William Raymond Kodadek; and Matthew Wendling (collectively, "Defendants"), move for summary judgment on the basis that their conduct was not unlawful and, even if it was, Defendants are entitled to qualified immunity. The parties agreed to dismiss Defendant Matthew Wendling as to all claims and to dismiss the entire fourth claim for conspiracy to violate civil rights. (Mot. 7.) Defendants move for summary judgment on all remaining claims.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion. (ECF No. 34.)[1]

## II. FACTUAL BACKGROUND

On November 16, 2016, at approximately 1:40 p.m., Plaintiff was a passenger in a red Ford Escape ("SUV") traveling in Glendora, California. (*See* Defs'. Statement of Uncontroverted Facts ("DSUF") 8, 19, ECF No. 34-1.) Around the same time, the Glendora Police Department received a call from a concerned citizen that two vehicles, a white Honda and a red Ford, each with two African-American occupants, appeared to be canvassing the area. (Decl. of Olu K. Orange ("Orange Decl.") Ex. B ("Dispatch Call") 0:40–1:00, ECF No. 36.) The call described the African-Americans as looking like "they were from South Central" and that "they don't look as if they were from the area." (*Id.*)

Defendant Kodadek, while on patrol, spotted the red SUV and followed it. (DSUF 19.) Defendant Kodadek ran a record check of the SUV and the registration tags came back expired. (*See id.* 20.) Defendant Kodadek then initiated a traffic stop. (*Id.*) The traffic stop was captured on a dash cam video of a second patrol car, although parts of the incident occurred off-camera. (Orange Decl. Ex. A ("Dash

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

Cam").)[2] Defendant Kodadek exited his patrol vehicle and walked up to the driver's side of the SUV. (DSUF 23.) The driver of the SUV was Antwon Shamburger, an African-American male. (*Id.*) Following a conversation between Defendant Kodadek and Mr. Shamburger, Mr. Shamburger was asked to exit the vehicle. (*Id.* 24–26.) Defendant Kodadek asked if he could search Mr. Shamburger, and Mr. Shamburger stated that he could. (*Id.* 28.) Defendant Kodadek did not find any illegal contraband or weapons on Mr. Shamburger. (*Id.*) Mr. Shamburger informed Defendant Kodadek that he was on probation for robbery, and Defendant Kodadek then instructed Mr. Shamburger to have a seat on the curb. (*Id.* 29–30.) Defendant Kodadek observed that Mr. Shamburger was wearing red shoes, and as a result, suspected that Mr. Shamburger and Plaintiff were part of the Bloods gang casing the area for a residential burglary. (*Id.* 32.)

Defendant Kodadek then approached the passenger side of the vehicle and asked Plaintiff to exit the SUV. (Dash Cam 1:25–1:30.) Plaintiff complied. (*Id.*) Defendant Kodadek asked Plaintiff to turn around, place her hands on top of her head, and interlock her fingers. (*Id.* 1:35–1:43.) Plaintiff complied as instructed, but also told Defendant Kodadek, "I don't think you're allowed to touch my body. Don't touch my body." (*Id.* 1:44–1:52.) Defendant Kodadek informed Plaintiff to not move, to not do anything stupid, and for Plaintiff to separate her feet. (*Id.* 1:51–1:55.) Plaintiff refused to separate her feet, and instead, told Defendant Kodadek to call a female officer. (*Id.* 1:52–1:55.) Defendant Kodadek then forced Plaintiff away from the SUV (and outside the range of the dash cam video). (*See id.* 1:57–2:05.) Defendant Kodadek stated that he placed Plaintiff in a wrist lock and placed her body against the brick wall along the southside of the sidewalk. (Decl. of William

---

[2] The Court's citation to the Dash Cam video reflects portions of the video that are indisputable. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by [a video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Raymond Kodadek ("Kodadek Decl.") ¶ 14, ECF No. 34-3.) While away from the dash cam, Defendant Kodadek repeatedly told Plaintiff to separate her feet, and Plaintiff repeatedly told Defendant Kodadek to let go of her arm. (Dash Cam 1:59–2:17.) Defendant Kodadek stated that, to maintain control, he forced Plaintiff to the ground, placed his right arm across her neck and shoulders, and placed handcuffs on her. (Kodadek Decl. ¶¶ 14–15; Dash Cam 2:18–3:03.) Plaintiff responded by asking, "Why are you doing this . . . my hands are behind my back, why are you choking me? Why are you choking me?" (Dash Cam 2:25–2:54.)

After placing handcuffs on Plaintiff, Defendant Kodadek then picked Plaintiff off the ground and walked her to the back of his patrol vehicle. (*Id.* 3:10–3:26.) Defendant Kodadek again asked Plaintiff to separate her feet. (*Id.* 3:28–3:29.) Plaintiff responded, "Put me in the car, you're not going to touch me." (*Id.* 3:32–3:35.) Defendant Kodadek responded by slamming Plaintiff onto the patrol vehicle and again requesting Plaintiff to separate her feet. (*Id.* 3:40–3:45.) Defendant Kodadek then conducted a waistband pat down search of Plaintiff by moving his hand from the left side of Plaintiff's waist to the right. (*Id.* 3:48–3:50.) Plaintiff responded by kicking her right leg backwards towards Defendant Kodadek, striking his groin. (*Id.* 3:50–3:51.) Defendant Kodadek then punched Plaintiff on the right side of her ribs and then pushed her to the ground. (*Id.* 3:51–3:54.) While Plaintiff was laying on the ground on her side, Defendant Kodadek placed his body on top of Plaintiff's right side and then placed his right knee on Plaintiff's stomach. (*Id.* 3:54–4:12.)

Plaintiff was arrested for resisting/obstructing a peace officer and battery on a peace officer. (DSUF 70.) She was transported to Foothill Presbyterian Hospital for medical clearance, then taken to the police station. (*Id.* 71.) She was booked and released on a citation. (*Id.* 74.)

Plaintiff subsequently filed a lawsuit with ten claims for relief: (1) violation of § 1983 pursuant to the First Amendment; (2) violation of § 1983 pursuant to the Fourteenth Amendment; (3) violation of § 1983 pursuant to the Fourth Amendment;

(4) violation of §§ 1983 and 1988 for conspiracy to violate civil rights; (5) *Monell* claim pursuant to § 1983; (6) violation of § 1983 pursuant to *Larez* and *Canton* for failure to train and supervise; (7) assault; (8) battery; (9) negligence; and (10) violation of California Civil Code section 52.1. (*See generally* Compl., ECF No. 1.)

### III. PRELIMINARY MATTERS

Before reaching the merits of Defendants' Motion, the Court addresses two preliminary matters: (1) Plaintiff's request for judicial notice; and (2) Defendants' objection to Plaintiff's expert reports.

**A. Plaintiff's Request for Judicial Notice**

In support of her Opposition, Plaintiff requests that the Court take notice of three sections of the California Commission on Peace Officer Standards and Training ("POST") learning materials. (Req. for Judicial Notice 1, ECF No. 40.) Defendants do not oppose or otherwise object to Plaintiff's request.

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

However, the Court declines to take notice of the documents requested because they are not necessary to the resolution of the Motion and because they are incomplete copies of the publication. *See Newman v. San Joaquin Delta Community College Dist.*, 814 F. Supp. 2d 967, 972 n.2 (E.D. Cal. 2011) (declining to take judicial notice on the basis that the materials were incomplete).

**B. Objections**

Defendants object to the expert reports of Andrea Bernhard and Roger Clark because they were not timely disclosed pursuant to the Court's Order. (Evidentiary Objections 2, ECF No. 45-1.) Plaintiff served the expert reports on December 12, 2018, via U.S. mail. (Pl.'s Resps. to Evidentiary Obj. Ex. A, ECF No. 46-2.)

However, initial disclosures were due on October 29, 2018, and rebuttal disclosures were due on November 19, 2018, pursuant to the Court's Scheduling and Case Management Order. (ECF No. 28; *see also* Order to Continue Trial and Related Dates, ECF No. 32.) These dates were set after the parties stipulated to extend the time for expert discovery cut-off and other related dates. (ECF No. 31.)

Federal Rule of Civil Procedure 26(a)(1)(A) authorizes courts to modify the disclosure of expert testimony requirements by order or local rule. The Court did just that in its Scheduling and Case Management Order. Rule 37(c)(1) automatically excludes any evidence not properly disclosed under Rule 26(a). *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, exclusion under Rule 37(c)(1) is not appropriate if the failure to disclose was substantially justified or harmless. *Id.*

Here, Plaintiff does not provide substantial justification for her failure to follow the explicit Order of the Court. However, Defendants have not identified any harm that they have suffered. Accordingly, the Court will consider the expert reports for the purposes of this Motion. This does not preclude Defendants from bringing a motion in limine to exclude the experts' testimony at trial on the basis of timeliness or other grounds.

Additionally, the Court does not rely on most of the evidence under objection and thus many of the objections are largely moot. *See Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115 (N.D. Cal. 2003). To the extent that this Order relies on any other evidence without discussion of the objection, the relevant objections are overruled. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will proceed [only] with any necessary rulings on defendants' evidentiary objections").

### IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott,* 550 U.S. at 378. A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a

genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## V. DISCUSSION

Defendants move for summary judgment on each of Plaintiff's remaining claims. Accordingly, the Court will address each claim in turn.

### A. Qualified Immunity

"The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001). Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). A clearly established constitutional right "must be particularized to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (internal quotation marks omitted). "[T]he focus is on whether the officer had fair notice" that his actions violated a constitutional right and were unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Where the constitutional right violated was clearly established, the officer was on notice that his conduct was unreasonable, and he is not entitled to qualified immunity. *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016).

A court may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. If the answer to either prong is no, the court need not continue, as the officer is entitled to qualified immunity (either because he has

violated no constitutional right, or because the right was not clearly established at the time). *See Wilkins v. City of Oakland*, 350 F.3d 949, 954–55 (9th Cir. 2003).

As to each claim, the Court will first address whether the facts support the alleged constitutional violation, then turn to whether the right at issue was clearly established at the time of Defendants' alleged misconduct.

## B. Section 1983 Claims

To prevail under 42 U.S.C. § 1983, a plaintiff must prove: 1) that he or she was "deprived of a right secured by the Constitution or laws of the United States," and 2) "that the alleged deprivation was committed under color of state law." *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).

### a. First Amendment

Plaintiff argues that Defendants' pat down search, use of force, and subsequent detention were in retaliation for Plaintiff's exercise of her First Amendment right to challenge a police officer's authority. (*See* Opp'n 18–19, ECF No. 41.)

#### 1. Violation of Constitutional Rights

The First Amendment protects an individual's "verbal criticism and challenge directed at police officers." *Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (internal quotation marks omitted). "[A]n individual has a right to be free from police action motivated by retaliatory animus but for which there was probable cause." *Id.* at 1193 (internal quotation marks omitted).

To establish a claim of retaliation in violation of the First Amendment, a plaintiff must (1) engage in activity that is constitutionally protected; (2) "demonstrate that the officers' conduct would chill a person of ordinary firmness from future First Amendment Activity"; and (3) show that "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Ford*, 706 F.3d at 1193 (9th Cir. 2013); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Courts have held that "an arrest or search and seizure would chill a person of

ordinary firmness from engaging in future First Amendment activity." *Ford*, 706 F.3d at 1193. Thus, even where there is probable cause for an arrest, a plaintiff may maintain a retaliation claim if an officer arrested the individual in retaliation for her protected speech. *Id.*

Defendants do not dispute the first two elements of this claim, instead focus solely on the third element. Defendants argue that Plaintiff cannot prove that Defendant Kodadek's desire to chill speech was a "but for cause" of his actions. (Mot. 21.) Plaintiff argues that Defendants attempted to chill her speech through an unlawful arrest, and search and seizure. (Opp'n 18.). A material dispute of fact exists regarding whether Defendant Kodadek's action was in retaliation to Plaintiff's verbal challenge of Defendant Kodadek's attempt to search her. "[T]he issue of causation ultimately should be determined by a trier of fact. . . ." *Ford*, 706 F.3d at 1194 (finding summary judgment in favor of the plaintiff appropriate on the issue of causation); *see also Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) (finding summary judgment inappropriate when there are material disputes of fact regarding an officer's motivation for his alleged unlawful actions). Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Kodadek's actions, including the pat down and his use of force and detention, were in response to Plaintiff's speech challenging his authority to conduct the pat down search and her request for a female officer. As there is a genuine dispute of material fact regarding whether Defendant Kodadek's desire to chill speech was a but-for cause of Defendant Kodadek's use of force, this issue is best left for the jury.

### 2. *Clearly Established Rights*

Defendant Kodadek is also not protected by qualified immunity on this claim. "Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech." *Vohra v. City of Placentia*, 683 F. App'x 564, 567 (9th Cir. 2017) (quoting *Ford*, 706 F.3d at 1195); *see also Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008) ("Arresting

someone in retaliation for their exercise of free speech rights was violative of law clearly established at the time of [the plaintiff's] arrest."); *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) ("The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers . . . .").

Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's first claim for First Amendment retaliation.

### b. Unlawful Pat Down Search

Plaintiff alleges that she was subjected to an unlawful pat down search in violation of § 1983 because Defendants failed to articulate particularized facts for the search, instead offering only generalized concerns about officer safety. (Opp'n 15.)

#### *1. Violation of Constitutional Rights*

Under the Fourth Amendment, a pat down search for weapons is permissible "for the protection of the policer officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). However, this does not allow an officer to conduct "a generalized 'cursory search for weapons.'" *Ybarra v. Illinois*, 444 U.S. 85, 93–94 (1979) ("The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked . . . ."). In determining whether a pat down search violates the Fourth Amendment, courts look to a variety of factors to support an officer's reasonable belief that an individual is armed and dangerous. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1022 (9th Cir. 2009). These include: "an officer's observation of a visible bulge in an individual's clothing," "sudden movements or repeated attempts to reach for an object" by the suspect, and "the nature of the suspected crime." *Id.* Facts establishing that "*if* an individual were armed he would be dangerous are insufficient if there was no reason to believe that the individual actually was armed." *Id.* (finding a conclusory reference to officer safety insufficient for a pat down search).

Here, a reasonable jury could find that the pat down search was unlawful. Defendants argue that the pat down search was lawful because (1) Defendant Kodadek was responding to a call that two vehicles with African American occupants, who appeared to be from South Central and not from the area, were casing the neighborhood; (2) Defendant Kodadek was aware that Glendora had residential burglaries involving African American gang members; (3) gang members usually carried weapons; (4) the SUV had an expired registration; (5) the registration history located the vehicle in the Pasadena area, known by Defendant Kodadek to have African American gangs; (6) Mr. Shamburger had no driver's license and was on probation for robbery; (7) male gang members sometimes have their female companions carry weapons; (8) Mr. Shamburger was wearing red shoes, which Defendant Kodadek believed tied Mr. Shamburger to the Bloods gang; and (9) Plaintiff was wearing a loose fitting shirt. Defendants' reasons for conducting the pat down search would essentially justify a pat down search of any African American in the Glendora area. *See Morgan v. Woessner*, 997 F.2d 1244, 1254 (9th Cir. 1993) (finding that there is no reasonable suspicion for a seizure where a tip made all African American males suspects); *see also U.S. v. Montero-Camargo*, 208 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (stating that factors such as a person's Hispanic appearance to "have such a low probative value that no reasonable officer would have relied on them to make an investigative stop" and that they "must be disregarded as a matter of law").

More importantly, Defendant Kodadek offers very little reason to justify his search of Plaintiff, such that a reasonable jury could find the search to be unlawful. Defendant Kodadek's reasons arguably provide him with a justification to search Mr. Shamburger, but not Plaintiff. Defendant Kodadek suspected that Mr. Shamburger belonged to a gang because he was an African American wearing red shoes. Although the Court is skeptical that simply being an African American from the Pasadena area wearing red shoes is sufficient to believe that a person belongs to a gang, Defendant

Kodadek fails to identify why he suspected that *Plaintiff* belonged to a gang to justify his search of *her*. *See Ybarra*, 444 U.S. at 93–94 (finding that the reasonable belief or suspicion to justify a frisk for weapons must be "directed at the person to be frisked"). No Defendant observed a visible bulge in Plaintiff's clothing. In fact, Plaintiff was wearing tight-fitting stretch pants known as leggings. (Opp'n 15; *see generally* Dash Cam.) As such, it would be difficult for Plaintiff to hide a weapon without any noticeable bulge. Moreover, the crime at issue was expired registration tags, which is not a violent crime. Plaintiff did not make a sudden movement or attempt to reach a weapon. Defendants seem to suggest that if Plaintiff was armed, she would pose a danger to officer safety; however, this is insufficient to justify a pat down search. *See Ramirez*, 560 F.3d at 1022.

Additionally, Plaintiff was compliant when Defendant Kodadek asked Plaintiff to step outside of the SUV and to interlock her fingers on top of her head. (Dash Cam 1:35–1:46.) Further, the Court is concerned with Defendant Kodadek's normal practice when investigating a person is to always pat them down first. (*See* Decl. of Erin Darling ("Darling Decl."), Ex. D ("Kodadek Dep.") 105:17–106:01, ECF No. 39-4.) Based upon the facts presented and viewed in the light most favorable to Plaintiff, a reasonable jury could find that the pat down search of Plaintiff was unlawful.

### 2. *Clearly Established Rights*

Defendant Kodadek is also not entitled to qualified immunity as it is clearly established law that the Fourth Amendment does not tolerate a frisk "[u]nless [the] officer can point to specific facts that demonstrate reasonable suspicion that the individual is armed and dangerous." *Ramirez*, 560 F.3d at 1022 (finding that a person being "testy" does not support a finding that the person had a weapon).

Accordingly, the Court denies Defendants' Motion as to Plaintiff's claim for an unlawful search in violation of the Fourth Amendment and § 1983.

### c. Excessive Force

Plaintiff alleges that Defendants used excessive force in violation of 42 U.S.C. § 1983 during their detention of Plaintiff.

#### 1. *Violation of Constitutional Rights*

Excessive use of force incident to a search or seizure is subject to the Fourth Amendment's objective reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Ninth Circuit analyzes excessive force by "considering the nature and quality of the alleged intrusion" and "the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Deorle*, 272 F.3d at 1279–80). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh [their] way through the factbound morass of 'reasonableness.'" *Id.* (alteration and internal quotation marks omitted) (quoting *Scott*, 550 U.S. at 383).

The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. An officer cannot simply claim that he "fear[ed] for his safety or the safety of others . . . there must be objective factors to justify such a concern." *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011). Thus, excessive force claims will usually present jury questions: "[w]here the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury; only in the absence of material disputes is it a pure question of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Wilkins*, 350 F.3d at 955 and *Scott*, 550 U.S. at 381 n.8) (internal quotation marks omitted). As such, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Torres*, 648 F.3d at 1125 (citing *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002)).

The crime at issue was an expired registration tag, which is not a particularly severe or violent crime. *See Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 919–20 (N.D. Cal. 2014) (denying summary judgment and finding that officers may have used excessive force when pushing the plaintiff to the ground on the suspicion of an expired vehicle registration). Additionally, Plaintiff was not the driver of the SUV.

Defendant Kodadek used force to detain and search Plaintiff. After Plaintiff agreed to step outside of the SUV and to interlock her fingers on top of her head, but refused to separate her feet, Defendant Kodadek forcibly moved Plaintiff (outside the view of the dash cam), then pushed her to the ground, and subsequently placed her in a chokehold. (Dash Cam 1:59–2:52.) Defendant Kodadek described this as placing his "right arm around [Plaintiff's] shoulders." (Kodadek Decl. ¶ 15.) At this point, Plaintiff made no verbal or physical threat to the officers. Plaintiff only requested that a female officer search her, and when Defendant started using physical force, Plaintiff indicated repeatedly that Defendant Kodadek was hurting her while still insisting on a female officer. Further, Defendant's expert, Roger Clark, opined that Defendant Kodadek's use of force, what he described as the "arm-across-shoulders" hold "is a level of potentially lethal force that cannot be justified under POST training and standards." (Darling Decl. Ex. M ("Clark Report"), at 13, ECF No. 39-13.) In sum, a reasonable jury may look at the totality of the circumstances and conclude that Defendant Kodadek's use of force in this instance was excessive.

Additionally, "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks and citations omitted). An officer who fails to intervene when a fellow officer uses excessive force would be responsible for violating the Fourth Amendment. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in part, rev'd in part*, 518 U.S. 81 (1996). An officer who breaches this duty could be held liable only if they had a "realistic opportunity" to intercede. *Cunningham*, 229 F.3d at 1289.

Here, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the each of the officers had a realistic opportunity and failed to intervene if/when Defendant Kodadek used excessive force on Plaintiff.

### 2. *Clearly Established Rights*

As a reasonable jury could find that Defendant Kodadek used excessive force, the next issue is "whether the right was clearly established" at the time. *Saucier*, 533 U.S. at 201. This requirement "does not mean that the very action at issue must have been held unlawful before qualified immunity is shed." *Wall v. Cty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). Officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The issue is whether, at the time of the encounter, "the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [he plaintiff] was unconstitutional." *Id.*; *see also Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) ("In excessive force cases, the inquiry remains whether, under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and [whether] any mistake to the contrary would have been unreasonable.") (internal quotation marks omitted).

Here, the law is clearly established that a police officer's use of force on a suspect who does not pose an immediate threat is excessive and impermissible. *Jaramillo*, 76 F. Supp. 3d at 923. The law is also clearly established that an officer who fails to intervene when his fellow officer uses excessive force violates the Fourth Amendment. *Koon*, 34 F.3d at 1447 n.25.

Accordingly, the Court denies Defendants' Motion as to Plaintiff's claim for excessive use of force in violation of 42 U.S.C. § 1983.

### d. **State Law Claims**

#### 1. *Assault and Battery*

"A peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to

such excessive force." *Johnson v. Bay Area Rapid Transit*, 790 F. Supp. 2d 1034, 1074 (N.D. Cal. 2011) *aff'd in part, vacated in part, rev'd in part on other grounds by Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013).

As indicated above, issues of material fact exist as to whether Defendants used unreasonable or excessive force against Plaintiff. Accordingly, the Court denies Defendants' Motion as to Plaintiff's assault and battery claim.

### 2. Negligence

Peace officers have a duty to act reasonably when using force, but the reasonableness of the officer's actions must be determined in light of the totality of the circumstances. *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013). To prevail on a negligence claim, a plaintiff must show that the officers "acted unreasonably and that the unreasonable behavior harmed" the plaintiff. *Price v. Cty. of San Diego*, 990 F. Supp. 1230, 1245 (S.D. Cal. 1998); *see also Ortega v. City of Oakland*, No. C07-02659 JCS, 2008 WL 4532550, at *14 (N.D. Cal. Oct. 8, 2008).

As discussed above, a reasonable jury could find that Defendants acted unreasonably in their use of force against Plaintiff. Accordingly, the Court denies Defendants' Motion as to the negligence claim.

### 3. California Civil Code Section 52.1

California Civil Code section 52.1 provides a claim "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998). A claim under section 52.1 is premised on the violation of a right guaranteed by the U.S. Constitution, and as such, a court must look to the elements of the constitutional claim to determine whether the section 52.1 claim is meritorious. *See Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) ("The elements of a section 52.1 excessive force claim are essentially identical to those of a § 1983 excessive force claim.").

Here, as discussed above, issues of material fact exist regarding whether Defendants violated Plaintiff's constitutional rights. Accordingly, the Court denies Defendants' Motion as to Plaintiff's section 52.1 claim.

**e.     *Monell* Claim**

Plaintiff also brings claims against the City of Glendora for municipal liability and against the City of Glendora and Defendant Rosales for failure to train and supervise the officers.

"[T]o establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Local government entities may be liable pursuant to § 1983 only for a deprivation of a right resulting from an official policy or custom. *Monell*, 436 U.S. at 694. To establish liability under *Monell*, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in original and internal quotation marks omitted) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Even if there was no explicit policy, a plaintiff must establish liability by showing that there was a permanent and well-settled practice which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotinik*, 485 U.S. 112, 127 (1988); *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996).

Summary judgment is appropriate as to Plaintiff's *Monell* claim. Plaintiff fails to identify any municipal policy or custom that resulted in the deprivation of Plaintiff's constitutional rights. Instead, Plaintiff offers evidence that the City of Glendora's Police Department maintained a training manual regarding cross-gender

pat-down searches and that Defendant Kodadek violated the department's policy by failing to act in accordance with that policy. The City of Glendora's training manual is not the moving force behind the alleged constitutional violation; rather, it is Defendant Kodadek's alleged failure to comply with the policy.

Additionally, Plaintiff has failed to create a material dispute of fact regarding her claim against the City of Glendora and Defendant Rosales for failure to train and supervise. A municipality's failure to train may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). To establish a failure to train, a plaintiff must show: (1) she was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) her constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (alterations in original and internal quotation marks omitted).

Here, Plaintiff identified one instance where Defendants failed to discipline Defendant Kodadek in a separate matter involving a female subject. *See Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) ("Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County."). However, with respect to that prior instance, it is undisputed that Defendants conducted an investigation and ultimately found the allegation against Defendant Kodadek unfounded, and the complainant there was uncooperative in the investigation. (Darling Decl. Ex. I, at 15, ECF No. 39-9.) Neither Plaintiff nor Plaintiff's expert, Mr. Clark, have identified how Defendants failed to properly train

the officers and whether Defendants' failure to train amounted to deliberate indifference.

Accordingly, the Court grants Defendants' Motion as to Plaintiff's *Monell* claim.

### VI.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion as to Plaintiff's *Monell* claim and **DENIES** Defendants' Motion as to all other claims. Accordingly, summary judgment is granted as to Plaintiff's fifth and sixth claims for relief, Defendant Matthew Wendling and the fourth claim for conspiracy are dismissed pursuant to the parties' agreement, and all other claims will proceed.

**IT IS SO ORDERED.**

March 1, 2019

_____
               **OTIS D. WRIGHT, II
   UNITED STATES DISTRICT JUDGE**